*310 OPINION.
Smith :
The petitioner kept his books of account and made his income-tax returns for 1919 and 1920 upon the basis of cash receipts and disbursements. On December 22, 1919, he received $45,000 as a consideration for entering into a contract by which he agreed to dispose of his shares of stock in the Syracuse Washer Corporation for an agreed amount of cash, a given number of shares of class A common stock of a new corporation, and an undertaking on the part of the new corporation to pay a note to a bank upon which he was jointly liable. He considered this to be income received in the year 1919 and treated it accordingly.
At the hearing of this proceeding counsel for the respondent stated that the theory upon which the respondent held it to be income of 1920 was:
* * * That it ⅛ a payment on a 1920 contract consummated in the year 1920, otherwise the $45,000 would be a payment on an option to purchase the stock and the assets of the Washer Corporation, and inasmuch as it was a substantial payment, it was a payment on account of the purchase and not a payment of an option, being a part of the purchase price it was income for 1920, as the contract of sale was closed in 1920, consummated in 1920.
A reference to the letter of the petitioner and Wilkinson to the board of directors of the Syracuse Washing Machine Corporation dated December 18, 1919, does not show that the $45,000 was to be received as part payment for the assets to be sold by Derschug and Wilkinson. It clearly was not so understood by the petitioner. To secure the $45,000 the petitioner parted with nothing. True, he had undertaken for a consideration named to do certain things on January 2, 1920, that is, to transfer certain assets to the Syracuse Washing Machine Corporation for a named consideration. ' For a breach of such agreement the petitioner would undoubtedly have been liable for damages. But this does not mean that the $45,000 received was a part payment for the assets sold. It was no part of the consideration named to be received in exchange for assets. If the $45,000 was income to the petitioner, we think it was income in the year 1919 when the petitioner received it and placed it to his credit upon his own books of account.
The second point in issue is whether the 10,010 shares of class A common stock of the Syracuse Washington Machine Corporation received by the petitioner in 1920 had a fair market value in 1920 and, if so, how much. In his income-tax return for 1920 the peti *311 tioner returned the stock as having a value of $1 per share. Presumably this was predicated upon the fact that 6,000 shares of the stock were sold on January 2, 1920, for $6,000. The petitioner now contends that the stock had no ascertainable fair market value at the date of receipt within the meaning of section 202(b) of the Revenue Act of 1918, which provides in part as follows:
When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any; but when in connection with the reorganization, merger, or consolidation of a corporation a person receives in place of stock or securities owned by him new stock or securities of no greater aggregate par or face value, no gain or loss shall be deemed to occur from the exchange, and the new stock or securities received shall be treated as taking the place of the stock, securities, or property exchanged.
The transaction between the petitioner and the Syracuse Washing Machine Corporation was more than an exchange of stock for stock. The petitioner exchanged his shares of stock in the Syracuse Washer Corporation and undertook to perform certain services for the new corporation in exchange for cash and a certain number of shares of class A common stock of the new corporation. The transaction is governed by the first clause of section 202(b) of the 1918 law, above quoted. If the value of the shares of stock received in exchange was in excess of the basis laid down by the statute the excess, in our opinion, constituted taxable income of the petitioner of 1920.
The evidence with respect to the value of the class A common stock at the date of receipt by the petitioner is in detail. The Syracuse Washer Corporation had obligated itself to purchase supplies for manufacture beyond its immediate needs. It had likewise obligated itself to employ the petitioner and Wilkinson on five-year contracts at large salaries. In order to produce a surplus upon its balance sheet it had set up good will at a value of $200,000 and had appreciated its patent account to the extent of nearly $300,000. There were no sales of the class A common stock of the new corporation in the open market during 1920 and one holder of 30 shares of the stock acquired by inheritance could find no market for it. Soon after the beginning of 1920 operating conditions became bad and it was questionable whether the corporation could escape receivership. The corporation sold 6,000 shares of its common stock at $1 per share on January 2, 1920. We think that this evidence indicates that the fair market value of the common stock was $1 per share at the date of receipt. Petitioner’s tax liability for 1920 should be redetermined accordingly.

Judgment will he entered under Rule 50.